UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No. 16-cv-05871 NC (PR)

RAUL F. GARCIA,

        Plaintiff,

    v.

E. HEALY, et al.,

        Defendants.

**ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK**

Re: Dkt. Nos. 43, 44

      Plaintiff Raul F. Garcia, a California state prisoner proceeding *pro se*, filed a civil rights complaint under 42 U.S.C. § 1983, alleging that Defendants Sergeant E. Healy ("Healy"), Lieutenant C. Countess ("Countess"), and Lieutenant D. Love ("Love") violated Plaintiff's federal constitutional rights.  Specifically, Plaintiff claims that Healy and Countess retaliated against him; all Defendants violated Plaintiff's right to due process

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

1

by failing to give Plaintiff adequate notice of the charges against him; and Love violated Plaintiff's right to due process because there was insufficient evidence to find Plaintiff guilty of a rules violation. Defendants have filed a motion to seal documents as well as a motion for summary judgment. Plaintiff has filed an opposition to both motions, and Defendants have filed a reply in support of their motion for summary judgment. For the reasons stated below, the Court denies without prejudice Defendants' motion to file confidential documents under seal, and grants in part and denies in part Defendants' motion for summary judgment.

## BACKGROUND

The following facts are taken in the light most favorable to Plaintiff and are undisputed unless otherwise indicated.

At the time of these events, Plaintiff was a California prisoner incarcerated at Pelican Bay State Prison ("PBSP"). Since February 8, 1991, Plaintiff has been a validated gang member of the Mexican Mafia ("EME"). Healy Decl. ¶ 10.

In February 2014, Healy, an Institutional Gang Investigator ("IGI"), was investigating Salvador Venegas, who was a recent parolee and validated associate of the EME. *Id.* ¶ 11. As an IGI, Healy reviews mail of validated gang members and associates to make sure that coded messages are not transmitted. *Id.* ¶ 13. Through Healy's investigation of Venegas, Healy recognized Venegas' handwriting. *Id.* ¶ 12.

In mid-February 2014, Healy stopped an incoming letter which included pictures from Ms. Tina Mendoza ("Mendoza") addressed to Plaintiff. Dkt. No. 25 ("Am. Compl.") ¶ 5. The reason given for disallowing the letter was that it was unauthorized inmate-to-inmate correspondence and/or inmate-to-parolee/probationer correspondence. *Id*; Healy

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

Decl. ¶ 7 and Ex. A.  Plaintiff filed an administrative grievance complaining that the confiscated pictures did not concern gang activity and should not have been disallowed. Healy Decl. ¶ 8; Countess Decl. Ex. A.  Healy stopped the incoming letter from Mendoza because Healy recognized the handwriting as belonging to Venegas, there were pictures of Venegas enclosed in the envelope, the return address on the letter was the address of Venegas' daughter, the letter included a sign-off frequently used by Venegas, and the letter contained a phone number with instructions to "ask for me Tina."  Healy Decl. ¶¶ 13-16. Healy believed that the purpose of the letter was to establish a connection for communication with Plaintiff and the EME, and that the name "Tina Mendoza" was an attempt to go undetected by authorities.  *Id.* ¶ 17.

Shortly thereafter, Healy intercepted a postcard signed by "Tina Mendoza," but written in what appeared to be Venegas' handwriting and addressed to Plaintiff.  *Id.* ¶ 20. The postcard included a reference to another EME affiliate that would be "stopping by soon."  *Id.*  Healy confiscated that postcard and provided Plaintiff with a stopped mail notification.  *Id.*, Ex. B.

Plaintiff believed that the stopping of the letter from Mendoza in mid-February was a mistake, and responded to Mendoza via postcard.  Am. Compl. ¶ 6.  Plaintiff's postcard to Mendoza stated that Plaintiff intended to file a complaint against Healy and the IGI for violating Plaintiff's rights, and Plaintiff asked Mendoza for her phone number for visitation purposes.  *Id.* ¶ 7.  In the postcard, Plaintiff also stated that the IGI had "taken to tampering with my incoming mail."  Healy Decl. ¶ 23.  On February 28, 2014, Healy disallowed Plaintiff's postcard from being sent to Mendoza.  Am. Compl. ¶ 8.  The reason given for stopping the postcard was because the postcard contained coded messages, promoted gang activities, and was unauthorized inmate-to-parolee/probationer

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

correspondence. *Id.*

On March 18, 2014, Countess interviewed Plaintiff concerning Plaintiff's grievance regarding the stopped letter from Mendoza. Am. Compl. ¶ 9. During this interview, Countess told Plaintiff, "These 602's are only going to make you[r] situation worse. For every action there's a reaction, so if I were you I would stop submitting these." *Id.* ¶ 10.

Despite the warning Plaintiff received from Countess, Plaintiff filed a second grievance on March 27, 2014. *Id.* ¶ 11. This grievance challenged the stopping of Plaintiff's outgoing postcard to Mendoza. *Id.* That same day, Healy wrote a rules violation report ("RVR") based on Plaintiff's outgoing postcard to Mendoza. Healy Decl. ¶ 28. The RVR charged Plaintiff with "communication evidencing [Security Threat Group] behavior or activities," in violation of California Code of Regulations, Title 15, § 3023(e). *Id.* and Ex. C. On April 2, 2014, Plaintiff was served with the RVR. Am. Compl. ¶¶ 11-12.

The RVR had been approved by Countess and indicated that it was based on "gang related communication relative to the EME," which is designated as a Security Group Threat ("STG"). *Id.* ¶ 14. When Countess interviewed Plaintiff for Plaintiff's grievance regarding the stopped outgoing postcard to Mendoza, Countess informed Plaintiff, "I told you for every action there's a reaction." *Id.* ¶ 16. Countess told Plaintiff that Plaintiff offended Healy with his grievance. *Id.* Countess continued to say, "since you want your due process, Healy wrote you up. Next time be careful what you ask for." *Id.*

Plaintiff claims that the RVR charges were so vague that he was unable to prepare an adequate defense. *Id.* ¶ 21. At the hearing, when Love asked Plaintiff if Plaintiff understood the charges, Plaintiff stated that he in fact did not understand the charges and that he did not know of what he was accused. *Id.* ¶ 23. Love denied Plaintiff's request

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

4

that the charges be dismissed or re-issued with adequate notice of the actual gang-related misconduct. *Id.* ¶ 24. Prior to calling Countess via telephone as a witness in Plaintiff's hearing, Love stated that calling Countess would be a waste of time because Love already knew what Love's decision would be. *Id.* ¶ 25. Plaintiff objected to Love being the hearing officer because he was biased, and Love told Plaintiff to file an appeal when the hearing was over. *Id.* In the end, Love found Plaintiff guilty of the charges even after Love confirmed that the charges did not specifically mention any EME gang activity. *Id.* ¶ 26. Nonetheless, Love informed Plaintiff that Love used to be part of the IGI and he would not go "against the grain" even if Love believed that Plaintiff was not guilty. *Id.*

Plaintiff filed the underlying federal civil rights complaint, alleging that Healy and Countess unlawfully retaliated against him by filing a false RVR; all Defendants violated Plaintiff's right to due process by not providing Plaintiff with adequate notice of the RVR charges; and Love violated Plaintiff's right to due process because there was not "some evidence" to support the finding of guilt on the RVR charges.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 4, 17.

## MOTION TO SEAL DOCUMENTS

Defendants have filed a motion to seal documents under Civil Local Rule 79-5. In the motion, Defendants request that the documents be viewed *in camera* but filed under seal. The exhibits include an internal memorandum prepared by Healy summarizing his investigation into the stopped communications between Mendoza and/or Venegas and Plaintiff, as well as the actual stopped communications.

There is a strong presumption favoring the public's right of access to court records

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

1   which should be overridden only for a compelling reason. *Hagestad v. Tragesser*, 49 F.3d

2   1430, 1433-34 (9th Cir. 1995). "Counseling against such access would be the likelihood

3   of an improper use, 'including publication of scandalous, libelous, pornographic, or trade

4   secret materials; infringement of fair trial rights of the defendants or third persons; and

5   residual privacy rights.'" *Valley Broadcasting Co. v. United States District Court*, 798

6   F.2d 1289, 1294 (9th Cir. 1986) (citation omitted).

7       Here, Plaintiff was not permitted to have the communications at issue because

8   Defendants believed they contained coded gang messages between validated gang

9   affiliates, in violation of the California Code of Regulations as well as prison regulations.

10  According to Defendants, the CDCR keeps confiscated gang-related materials confidential

11  so gang investigators can continue to detect gang communications and activity without

12  being compromised. In addition, allowing the public to access an internal memorandum

13  regarding an investigation and findings of prison gang activity certainly impacts

14  institutional safety and security. Because gang communications also potentially threatens

15  institutional safety and security and encourages gang activity, the court accepts that there

16  are compelling reasons to file portions of the requested exhibits under seal.

17      Defendants have not redacted any portion of the documents they wish to seal;

18  rather, they request that the documents be sealed in their entirety. However, a comparison

19  of the confidential documents and the exhibits attached to both Plaintiff's and Defendants'

20  pleadings reveals that at least one confidential document and portions of others are already

21  matters of public record as they are attached as exhibits to the parties' pleadings. *Compare*

22  Dkt. No. 24-2, Ex. B at 1 *and* portions of Dkt. No. 24-2, Ex. D *with* Dkt. No. 52 ("Pl.

23  Decl."), Ex. 6 *and* Pl. Decl., Ex. 5.

24      The Northern District of California Civil Local Rule 79-5 provides specific

25  Case No. 16-cv-05871 NC (PR)
    ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
26  AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
    INSTRUCTIONS TO CLERK

27                                          6

28

instructions on how parties may move to file documents under seal. According to the commentary, "This rule is designed to ensure that the assigned Judge receives in chambers a confidential copy of the unredacted and complete document, annotated to identify which portions are sealable, that a separate unredacted and sealed copy is maintained for appellate review, and that a redacted copy is filed and available for public review that has the minimum redactions necessary to protect sealable information."

Here, Defendants have not properly complied with the instructions set forth in Civil Local Rule 79-5(d). Thus, Defendants' motion is DENIED without prejudice. The Court will not consider these "confidential documents" in adjudicating Defendants' motion for summary judgment.

Defendants are reminded that, "A sealing order may issue only upon a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79-5(b). Should Defendants choose to re-file an administrative motion to seal, any request to seal documents must be "narrowly tailored to seek sealing only of sealable material." *Id.* If Defendants re-file a motion to seal, they must comply with Civil Local Rule 79-5(d).

## MOTION FOR SUMMARY JUDGMENT

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

7

return a verdict for the nonmoving party.  *See id.*

A Court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

B.   Analysis

Defendants move for summary judgment, and argue: (1) Healy and Countess did not retaliate against Plaintiff and alternatively, Healy and Countess are entitled to qualified immunity on the retaliation claim; (2) Defendants did not violate Plaintiff's right to due

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

8

United States District Court
Northern District of California

process because Plaintiff received adequate notice of the charges against him, and

alternatively, Defendants are entitled to qualified immunity; (3) Love did not violate

Plaintiff's right to due process because there was some evidence to find Plaintiff guilty of

the charges against him, and alternatively, Love is entitled to qualified immunity; and (4)

Plaintiff is not entitled to injunctive or declaratory relief. The Court addresses each

argument in turn.

    1.   <u>Retaliation</u>

Plaintiff alleges that Healy and Countess retaliated against him because Plaintiff

filed grievances against the IGI. Defendants argue that Healy is entitled to summary

judgment because: (1) Healy did not take an adverse action based on Plaintiff's protected

conduct; (2) Plaintiff's exercise of his First Amendment rights was not chilled; and (3)

Healy's actions advanced a legitimate penological goal. Defendants also assert that

Countess is entitled to summary judgment because: (1) Countess did not take an adverse

action based on Plaintiff's protected conduct, and (2) Countess' conduct furthered a

legitimate penological interest. Alternatively, Defendants assert that Healy and Countess

are entitled to qualified immunity.

"Within the prison context, a viable claim of First Amendment retaliation entails

five basic elements: (1) An assertion that a state actor took some adverse action against an

inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th

Cir. 2005) (footnote omitted).

    a.   <u>Healy</u>

Defendants do not contest that Healy took an adverse action against Plaintiff, or that

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
INSTRUCTIONS TO CLERK

9

1  Plaintiff's filing of grievances was protected conduct.  Therefore, the Court will only

2  determine whether there is a genuine issue of material fact whether:  (1) Healy took

3  adverse action "because of" Plaintiff's protected conduct; (2) the adverse action "chilled"

4  Plaintiff's First Amendment activity; and (3) Healy's actions reasonably advanced a

5  legitimate penological goal.

6      First, causation requires showing that the prison official intended to take the adverse

7  action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for

8  some other reason.  *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016).  To establish

9  causation then, Plaintiff must "put forth evidence of retaliatory motive, that, taken in the

10 light most favorable to him, presents a genuine issue of material fact as to [Healy's] intent"

11 in writing the RVR.  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Bruce*

12 *v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

13     Here, Healy declares that he issued the RVR solely because Plaintiff was attempting

14 to further EME's criminal enterprise by establishing a conduit of communication between

15 an STG member and associate that would go undetected by prison officials.  Healy Decl.

16 ¶¶ 26, 30, 36.  Healy further declared that it was his duty to reduce and/or eliminate

17 opportunities for EME members and associates to communicate about EME activities and

18 that Plaintiff's attempted communication to Mendoza was a communication to Venegas,

19 and therefore, a rules violation.  ¶¶ 30, 36.

20     On the other hand, Plaintiff alleges that Healy issued the RVR because Plaintiff

21 filed two grievances against Healy and the IGI.  In the first grievance, PBSP-D-14-00728,

22 Plaintiff complained about the stopped incoming letter from Mendoza which had enclosed

23 5 pictures.  Because only 3 of the 5 pictures were deemed to meet disapproval criteria,

24 Plaintiff requested that the remaining 2 pictures be returned to the sender or that Plaintiff

25

26

27

28

be permitted to possess them.  Pl. Decl., Ex. 4.  This grievance was known to Healy

because Plaintiff's request for interview was initially forwarded to Healy on March 9,

2014.  Pl. Decl., Ex. 3.

On March 18, 2014, Countess interviewed Plaintiff for PBSP-D-14-00728, and

Countess warned Plaintiff that the filing of grievances was only going to make Plaintiff's

situation worse, and "[f]or every action there's a reaction, so if I were you I would stop

submitting these."  Am. Compl. ¶ 10.

On March 27, 2014, Plaintiff filed a second grievance, PBSP-D-14-00865, in which

Plaintiff challenged the propriety of the IGI stopping an outgoing postcard.  Pl. Decl., Ex.

7.  Specifically, Plaintiff had attempted to mail a postcard to Mendoza, which was stopped

on February 28, 2014, by Healy.  Plaintiff argued that his postcard contained no coded

messages because if it had, the IGI would have initiated disciplinary proceedings, but no

charges had been filed.  *Id.*  That same day, Healy issued an RVR for "communication

evidencing STG behavior or activities," in violation of California Code of Regulations,

title 15, § 3023(e).

When Countess interviewed Plaintiff for Plaintiff's second grievance, Countess'

commented that Plaintiff's filing of grievances "offended" Healy and reminded Plaintiff

that, "I told you for every action there's a reaction . . . since you want your due process,

Healy wrote you up.  Next time be careful what you ask for."

Evidence probative of retaliatory animus includes proximity in time between the

protected speech and the alleged adverse action, prison official's expressed opposition to

the speech, and prison official's proffered reason for the adverse action was false or

pretextual.  *See Shepard*, 840 F.3d at 690.

The proximity in time between Plaintiff's grievances and the issuance of the RVR is

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
INSTRUCTIONS TO CLERK

11

1    probative that Healy had a retaliatory motive to issue the RVR.  Moreover, Countess and

2    Healy worked together in the IGI, and Countess' words to Plaintiff can reasonably be

3    inferred to be both expressed opposition to Plaintiff's filing of grievances and to suggest

4    that Healy's reason for the RVR was false or pretextual.

5         In addition, Healy asserts that he was motivated to write the RVR because Plaintiff

6    committed a serious rules violation.  The California Code Regulations to which he cites

7    within the RVR include one regarding identification of a gang source item, *see* 15 Cal.

8    Code Regs. § 3378(c)(8)(c)(G) (2013),[1] and one stating that inmates shall not knowingly

9    promote, further, or assist STG, *see* 15 Cal. Code Regs. § 3999.13 (2013) (providing

10   revision to 15 Cal. Code Regs. § 3023(c)).  However, neither of those sections appear to

11   mandate the filing of an RVR.  On the other hand, Healy charged Plaintiff with violating

12   15 Cal. Code Regs. § 3023(e), which stated, "Inmates shall not conspire, attempt, or

13   participate in behavior or activities specifically identified in Section 3314(a)(3)(L) and

14   3314(a)(3)(M), Administrative Rules Violations, STG Contraband and Behavior; or

15   Section 3315(a)(3)(Y) and 3315(a)(3)(Z) Serious Rules Violations, STG Behavior, as

16   outlined in section 1200 of this Instructional Memorandum."  The specific act with which

17   Plaintiff was charged was described as "communication evidencing STG behavior or

18   activities," which could fall under either the administrative rules violation or the serious

19   rules violation sections.

20        As in *Shepard*, while a jury might believe Healy's version of events that Healy only

21   issued the RVR because Plaintiff's actions required such, and that Healy bore no

22   retaliatory animus in writing the RVR, the evidence here does not conclusively establish

23

24   _____
     [1] This subsection was repealed in October 2014.

25   Case No. 16-cv-05871 NC (PR)
     ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
26   AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
     INSTRUCTIONS TO CLERK

27                                          12

28

that there is no genuine issue of material fact as to Healy's motivation. *See Shepard*, 840 F.3d at 689-90.

Thus, the Court concludes that Plaintiff has submitted evidence from which it can be reasonably inferred that Healy wrote the RVR because of Plaintiff's filing of grievances.

Next, to show a chilling effect, a plaintiff does not have to show that his speech was actually inhibited, "but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568-69). Direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. *Id.* at 1270 (quoting *Rhodes*, 408 F.3d at 567 n.11). For an inmate to show a chilling effect through direct and tangible harm, the harm need only be more than minimal, *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations omitted), and the Ninth Circuit has held that placement in administrative segregation is "significantly more than minimal" and therefore sufficient to constitute a chilling effect, *Shepard*, 840 F.3d at 691 (concluding that a jury could find that the threat of administrative segregation would chill a person of ordinary firmness from complaining about officer misconduct). Here, despite the fact that Plaintiff continued to file grievances, the Court cannot say that as a matter of law, a reasonable person would not have been chilled by Healy's writing of the RVR. *See also Rhodes*, 408 F.3d at 567 n.11 (recognizing that harm that is more than minimal "will almost always have a chilling effect" and requiring an allegation of harm in addition to a chilling effect "would seem under the circumstances to be no more than a nicety").

Finally, while Healy asserts that the RVR reasonably advanced legitimate

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

penological activites, the Ninth Circuit has clearly stated that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Here, Healy has declared that he had a duty to write an RVR when he discovered that Plaintiff committed a serious rule violation. Healy Decl. ¶ 32. However, as stated above, there is a genuine issue of material fact as to causation. Thus, as *Shepard* recognized, "a prison official who uses a valid procedure as subterfuge to obscure retaliation cannot assert that [his action] served a valid penological purpose, even though [the prisoner] may have arguably ended up where he belonged." *Shepard*, 840 F.3d at 692 (quoting *Bruce*, 351 F.3d at 1289).

Accordingly, Defendants' motion for summary judgment as to Healy is DENIED.

b. <u>Countess</u>

Defendants argue that Plaintiff cannot show that Countess took an adverse action, that any adverse action was "because of" Plaintiff's protected conduct, that Countess' action "chilled" Plaintiff's First Amendment activity, or that Countess' actions did not reasonably advanced a legitimate penological goal.

In *Brodheim*, the Ninth Circuit recognized that a prison guard's warning on a prisoner's grievance "to stop doing something carries the implication of some consequence of a failure to heed that warning." 584 F.3d at 1270. In that case, the prison guard warned the prisoner "to be careful what you write, req[u]est on this form." *Id.* at 1266.

Here, Plaintiff claims that Countess warned him that filing grievances would make Plaintiff's situation worse and "if I were you, I would stop submitting these" because "for every action there's a reaction." Plaintiff declared that Countess had used a threatening

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

tone and Plaintiff believed that Countess was trying to intimidate him to discourage him from pursuing his grievances. "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Id.* at 1271. As in *Brodheim*, this Court finds that Countess' threats are sufficient to raise a genuine issue of material fact that Countess took an adverse action against Plaintiff.

As to causation, the proximity in time between Countess' threats and Plaintiff's grievances is probative that Countess was motivated by retaliation. In addition, viewing the facts in the light most favorable to Plaintiff, a reasonable inference can be made that Countess' warnings to Plaintiff were in direct response to Plaintiff's filing of grievances. Thus, the Court finds that there is a genuine issue of material fact as to causation.

As to the chilling inquiry, the Court finds that there is a genuine issue of material fact as to whether Plaintiff has objectively shown whether Countess' warnings "would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568-69) (emphasis in original). Thus, the Court finds that there is a genuine issue of material fact as to the chilling inquiry.

Finally, Defendants do not argue, nor could they argue, that Countess' warnings to Plaintiff furthered a legitimate penological interest. Thus, the Court finds that there is a genuine issue of material fact as to this factor as well. *See Bruce*, 351 F.3d at 1289 ("prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.").

Accordingly, Defendants' motion for summary judgment as to Countess is DENIED.

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

15

c.    Qualified immunity

Defendants argue, in the alternative, that Healy and Countess are entitled to qualified immunity.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982).  A Court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam).

In considering whether a defendant is entitled to qualified immunity, the inquiry must focus on the time of the conduct, i.e., whether the officer's acts were reasonable in light of the information he possessed at the time he acted, rather than its aftermath and effect because no officer can observe whether his retaliation has successfully chilled a prisoner's rights until long after deciding to act.  *Rhodes*, 408 F.3d at 570.

Despite Defendants' arguments that there was no clearly established right here, the Court notes that "[r]etaliation against prisoners for their exercise of [their First Amendment] right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim*, 584 F.3d at 1269; *see Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (stating the "prohibition against retaliatory punishment is "clearly established law" in the Ninth Circuit, for qualified immunity purposes").  In addition, in

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

16

2003, *Bruce*, 351 F.3d at 1289, clearly established that a government official may not use an otherwise valid procedure as a ruse or a cover to silence and punish an inmate. *See Shephard*, 840 F.3d at 694 (it is clearly established that administrative segregation cannot be imposed every time a prisoner complains about staff misconduct, considering "substantial chilling effect" this would have on "long established right of prisoners to seek grievances").

Viewing the evidence in the light most favorable to Plaintiff, it would have been clear to a reasonable prison official that Healy and Countess' conduct was unlawful at the time they acted. Here, it would have been clear to Defendants that warning Plaintiff to stop filing grievances and issuing an RVR in retaliation for Plaintiff's protected conduct violated the law.

Accordingly, Defendants are not entitled to qualified immunity for Plaintiff's retaliation claim.

2.    Adequate notice

Plaintiff argues that he received inadequate notice of the RVR charges because the RVR was so vague as to what "gang-related communication" and "illicit EME gang-related activity" were that Plaintiff could not prepare an adequate defense at the hearing. Am. Compl. ¶¶ 18-21.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out specific procedural requirements which must be followed at disciplinary proceedings. The first is that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564.

Here, the RVR specifically charged Plaintiff with violating California Code of

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

17

Regulations, Title 15, § 3023(e), which provides "Inmates shall not conspire, attempt, or participate in behavior or activities specifically identified in Section 3314(a)(3)(L) and 3314(a)(3)(M), Administrative Rules Violations, STG Contraband and Behavior; or Section 3315(a)(3)(Y) and 3315(a)(3)(Z) Serious Rules Violations, STG Behavior, as outlined in section 1200 of this Instructional Memorandum."[2] The RVR describes the specific acts at issue as "communication evidencing STG behavior or activities." Pl. Decl., Ex. 8 at DEFS 000001. Within the RVR, Healy specifically describes four pieces of communication that demonstrated "the establishment of an attempted conduit of EME related activity." Id. Two are incoming correspondence to Plaintiff from an author with similar handwriting to Venegas, one is an outgoing postcard from Plaintiff to Mendoza, who Healy believed to be a fictitious name of Venegas, and the last were inmate generated notes by Venegas intimating that Venegas represented the EME and soliciting for work on behalf of the EME under the direction of Plaintiff. Id. at DEFS 000002-000003. The RVR concluded that, based on the investigation of the correspondence, Venegas and Plaintiff were intentionally circumventing mail procedures to communicate with each other in order to go undetected by prison officials; it appeared that Venegas was willing to work for the EME under the direction and control of Plaintiff; and the correspondence demonstrated that Plaintiff had influence within the EME. Id. at DEFS 000003. Finally, the RVR stated that the correspondence met the criteria under California Code of Regulations, title 15, § 3023(c) regarding promotion of STG activities because the communications were for illicit gang-related activities. Id. at DEFS 000003-000004.

A prisoner's right to due process is violated "only if he [is] not provided with

---

[2] As previously stated, this revision appears in California Code of Regulation, title 15, § 3999.13, STG Pilot Program.

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

18

process sufficient to meet the *Wolff* standard." *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). The Ninth Circuit has made clear that "the due process clause does not require detailed written notice of charges. . . ." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). In considering the specificity of notice necessary to satisfy due process, "courts should remember 'the legitimate institutional needs of assuring the safety of inmates and prisoners' and avoid [imposing] 'burdensome administrative requirements that might be susceptible to manipulation.'" *Zimmerlee v. Keeney*, 831 F.2d 183, 188 (9th Cir. 1987) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). One legitimate concern for prison administrators is the possibility that more detailed information regarding the communications or correspondence at issue can potentially provide information to EME gang members in furtherance of their activities, which is prohibited by the California Code of Regulations and was the exact reason given by Healy for stopping the correspondence in the first place.

Plaintiff initially argued that the charges of "gang-related communication" and "illicit EME gang-related activity" were too vague for Plaintiff to adequately marshal a defense. In Plaintiff's opposition, Plaintiff takes issue with the use of "attempted conduit" versus "conduit" versus "communication." Opp. at 29. Plaintiff also challenges Healy's failure to define "capacity" and "influence" as used in Healy's description of Plaintiff's role in the EME. *Id.*

However, the body of the RVR contains a detailed description of the specifics of the charge, and the evidence upon which Healy relied. In a prison disciplinary hearing, "the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564 (citing *In re Gault*, 387

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

19

U.S. 1, 33-34 & n.54 (1967)). *See also Sira v. Morton*, 380 F.3d 57, 72 (2d. Cir.2004)

("This is not to suggest that the Constitution demands notice that painstakingly details all

facts relevant to the date, place, and manner of charged inmate misconduct; but there must

be sufficient factual specificity to permit a reasonable person to understand what conduct

is at issue so that he may identify relevant evidence and present a defense.")

Here, the RVR clearly cites to several relevant California Code of Regulations

sections, and provides in great detail, the reasons each of the four correspondences caused

Healy to believe that Plaintiff was attempting to communicate with Venegas by using a

fictitious name for Venegas, and Plaintiff held a position in the EME of control over other

EME members or associates like Venegas. On April 2, 2014, Plaintiff received notice of

the RVR. Am. Compl. ¶ 13. Plaintiff requested a postponement of his hearing until June

2, 2014, so that Countess could testify as a witness.

Any reasonable person reading the RVR would have understood that Plaintiff was

being charged with attempting to communicate with an EME member or associate in an

effort to do so undetected by prison officials in order to conduct illicit EME activities

while holding a controlling role within the EME. In addition, a review of the RVR hearing

disposition demonstrates that Plaintiff adequately marshalled a defense, asking pointed and

specific questions to Countess and Healy regarding Venegas' handwriting, the non-specific

allegation of STG behavior at issue, that Plaintiff did not possess the correspondence

authored by Venegas and should not be liable for their contents, and a variety of other

relevant questions. Pl Decl., Ex. 8 at DEFS 000007-000010.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claim that

he was provided inadequate notice of the prison disciplinary charge against him in

violation of his due process rights is GRANTED. As such, the Court finds it unnecessary

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
INSTRUCTIONS TO CLERK

United States District Court
Northern District of California

1    to address Defendants' alternative argument that they are entitled to qualified immunity.

2        C.    Some evidence

3        Plaintiff argues that Love improperly found him guilty of the RVR because there

4    was insufficient evidence to do so. Specifically, Plaintiff argues that there was no

5    evidence that Plaintiff "knowingly" promoted or furthered any STG activities.

6        Due process requires that there be "some evidence" to support the disciplinary

7    decision. *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985). An examination of the

8    entire record is not required nor is an independent assessment of the credibility of

9    witnesses or weighing of the evidence. *See id.* at 455. The relevant question is whether

10   there is any evidence in the record that could support the conclusion reached by the

11   disciplinary board. *See id.* The federal constitution does not require that the evidence

12   preclude all conclusions except the one reached by the disciplinary board. *Id.* at 457.

13       While Plaintiff attempts to argue that his testimony should have been found

14   credible, and Plaintiff did not believe that Mendoza was a fictitious name being used by

15   Venegas, there is "some evidence" to find that Plaintiff knowingly promoted or furthered

16   EME activities. A reasonable inference can be made that Venegas, using Mendoza as a

17   fictitious name, was attempting to reach Plaintiff via mail using coded messages in an

18   attempt to provide Plaintiff with a phone number to reach Venegas. When Plaintiff did not

19   receive that communication, Plaintiff attempted to contact Venegas to warn Venegas that

20   the IGI had stopped his previous communication, and to send a phone number so they

21   could talk. Another correspondence from Venegas to Plaintiff was stopped, and this one

22   informed Plaintiff that an EME associate would be contacting Plaintiff soon. Finally, two

23   inmate intercepted notes by Venegas were seized, in which Venegas indicated that he

24   represented the EME, Venegas discussed EME territories, and specified that he was

25   Case No. 16-cv-05871 NC (PR)
     ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
26   AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
     INSTRUCTIONS TO CLERK

27                                          21

28

supposed to recruit soldiers to work on behalf of Plaintiff.  While Plaintiff may disagree with Love's conclusion and inferences made from the evidence presented, the Court cannot say that there is a genuine issue of material fact that there was not some evidence sufficient to find Plaintiff guilty of the RVR.

Accordingly, Defendants' motion for summary judgment on the claim of insufficient evidence is GRANTED.  As such, the Court will not address Defendants' alternative argument that Love is entitled to qualified immunity.

### 4.    Injunctive relief

Defendants argue that Plaintiff is not entitled to injunctive relief because no Defendant violated Plaintiff's constitutional rights.  Defendants also argue that any request for declaratory relief is moot.

Although Eleventh Amendment immunity precludes an award of damages against Defendants in their official capacities, it "does not bar actions for declaratory or injunctive relief brought against state officials in their official capacity." *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 (9th Cir. 1991).  Because the Court finds that there is a genuine issue of material fact as to Plaintiff's retaliation claim, the Court will not dismiss Plaintiff's request for injunctive relief to expunge the RVR.

Plaintiff also seeks declaratory relief.  However, his request for declaratory relief seeks only a declaration that his rights were violated.  Because Plaintiff's claim for damages necessarily entails a determination whether Plaintiff's rights were violated, his separate request for declaratory relief is subsumed by those claims, and will be dismissed. *Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005).

### C.    Referral to pro se prison settlement program

The Court finds good cause to refer this matter to U.S. Magistrate Judge Illman for

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

22

settlement proceedings on the retaliation claim discussed above. The proceedings will consist of one or more conferences as determined by Judge Illman. The conferences shall be conducted with all interested parties or their representatives, attending by videoconferencing if they so choose, as determined by Judge Illman. If these settlement proceedings do not resolve this matter, the Court will consider appointing counsel for Plaintiff and set this matter for trial.

## CONCLUSION

1.      Defendants' motion to seal confidential documents is DENIED without prejudice. The Court STAYS the unsealing for 30 days, so that Defendants may submit a further motion that is compliant with Local Rule 79-5.

Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The motion is GRANTED as to Plaintiff's due process claims. All claims against Defendant Love are dismissed. The motion is DENIED as to Plaintiff's retaliation claim against Healy and Countess. The motion is DENIED as to Plaintiff's request for injunctive relief. The motion is GRANTED as to the Plaintiff's request for declaratory relief. In summary, the surviving claim is Plaintiff's retaliation claim against Defendants Healy and Countess.

2.      The instant case is REFERRED to U.S. Magistrate Judge Illman for settlement proceedings on the retaliation claim against Healy and Countess in this action, as described above. The proceedings shall take place within ninety (90) days of the filing date of this order. Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the Court a report regarding the

Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

23

1 prisoner settlement proceedings.

2     3.     The instant case is STAYED pending the settlement conference proceedings.

3 The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.

4

5     **IT IS SO ORDERED.**

6 DATED:     March 26, 2018

7                                             NATHANAEL M. COUSINS
                                            United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 Case No. 16-cv-05871 NC (PR)
ORDER DENYING MOTION TO FILE CONFIDENTIAL DOCUMENTS UNDER SEAL; GRANTING IN PART
26 AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT;
INSTRUCTIONS TO CLERK
27                                             24

28